1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Petitioner,                                    No. C 14-01905 JSW

v.

SF GREEN CLEAN, LLC,                               **ORDER GRANTING MOTION TO**
                                                   **CONFIRM AND DENYING**
    Respondent.                                    **CROSS-MOTION TO VACATE**
_____/          **ARBITRATION AWARD**

        This matter comes before the Court upon consideration of Petitioner United States of

America's ("Petitioner") motion to confirm the arbitration award by the American Arbitration

Association ("AAA") and for entry of judgment in favor of the Presidio Trust (which was

petitioner in the arbitration action) and Respondent SF Green Clean, LLC's ("Respondent")

cross-motion to vacate the arbitration award.  Having carefully reviewed the parties' papers and

considering their arguments and relevant authority, the Court hereby GRANTS Petitioner's

motion to confirm and DENIES Respondent's cross-motion to vacate.

                                    **BACKGROUND**

        The parties arbitrated their dispute about possession of a property located at 222 Halleck

Street, Building 222, in the Presidio of San Francisco, San Francisco, California ("the

Premises") before the AAA.  (Compl. ¶ 9.)  On May 15, 2006, the Presidio Trust (as Landlord)

and Hermes Investment Group, LLC (as Tenant) executed a lease for the Premises ("the

Lease").  (*Id.* at ¶ 10.)  The Lease included an arbitration clause which specified that "[i]n the

event of a dispute over Tenant's right to possession of the Premises," the dispute would be

United States District Court

For the Northern District of California

1   submitted to the AAA for resolution. (*Id*.)  On January 4, 2010, the Lease was amended by a

2   First Amendment, executed by the Presidio Trust, Hermes, and Respondent SF Green Clean.

3   (*Id.* at ¶ 11.)  The First Amendment incorporated the terms and conditions of the original Lease

4   and specifically provided that Respondent was added as a tenant as if it had executed the

5   original Lease, "and had signed the Lease in every instance that the Lease was signed by"

6   Hermes. (*Id.* at ¶ 12.)

7        The term of the Lease expired on July 1, 2013.  However, Respondent has continued to

8   operate its business on the Premises. (*Id.* at ¶ 14.)  On or about January 17, 2014, the Presidio

9   Trust filed an initial Statement of Claim with AAA naming Respondent SF Green Clean, LLC

10  and Hermes Investment Group, Inc. as respondents. (*Id.* at ¶ 15.)  Hermes Investment Group,

11  Inc. entered into a written stipulation that possession should be awarded to the Presidio Trust.

12  (*Id*. at ¶ 16.)  Respondent did not answer the claim, but through email correspondence

13  challenged the appropriateness of the arbitration and the qualifications of the Arbitrator. (*Id*.)

14      The matter came on for a hearing before the Arbitrator on February 7, 2014. (*Id*. at ¶

15  17.)  On February 25, 2014,  the Arbitrator issued a written Award ("the Award") in the

16  Presidio Trust's favor. (*Id.* at ¶ 18.)  The Award ordered Respondent to deliver possession of

17  the Premises to the Presidio Trust unless Respondent paid the Presidio Trust a nominal rent of

18  $3,000, in which case the Award would be stayed until midnight on September 1, 2014. (*Id*.)

19  The Arbitrator also determined that the Presidio Trust was entitled to recover its fees, costs, and

20  expenses, and therefore ordered Respondent to pay the Presidio Trust a total amount of

21  $18,687.50. (*Id.*)  Finally, the Award provided that Respondent should reimburse the Presidio

22  Trust $5,650 for the administrative fees and expenses of the arbitration proceedings. (*Id.*)  To

23  date, Respondent has paid only the nominal rent of $3,000 and refused to pay the additional fees

24  and expenses owed. (*Id.* at ¶ 19.)

25      Subsequently, on April 24, 2014, Petitioner filed a complaint in this Court to confirm the

26  arbitration award.  On April 30, 2014, Petitioner filed a motion to confirm the arbitration award.

27  Respondent filed a cross-motion to vacate the arbitration award on May 23, 2014.

28

1    On June 23, 2014, Respondent filed an answer in which it raised eight counterclaims.

2    Petitioner filed a motion to dismiss and/or strike Respondent's counterclaims on July 1, 2014.[1]

3    The Court shall address specific additional facts in the remainder of this Order.

4                                    **ANALYSIS**

5    **A.    Standard of Review.**

6    The Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, provides that "within one year after

7    the [arbitration] award is made any party to the arbitration may apply to the court so specified

8    for an order confirming the award, and thereupon the court must grant such an order unless the

9    order is vacated, modified, or corrected."

10    Pursuant to the FAA, 9 U.S.C. § 10, a court may vacate an arbitration award on the

11    following grounds: "(1) where the award was procured by corruption, fraud, or undue means;

12    (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3)

13    where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon

14    sufficient cause shown, or in refusing to hear evidence pertinent and material to the

15    controversy; or of any other misbehavior by which the rights of any party have been prejudiced;

16    or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a

17

18    _____

19    [1] This Court finds Respondent's counterclaims to be untimely. Under the FAA, a
motion to vacate an arbitration award must be served on the adverse party, the Petitioner in
20    this case, within three months from the date the arbitration award is filed. 9 U.S.C. § 12.
"The clear import of this statutory instruction is that challenges to an arbitration award are to
21    be brought via a timely motion to vacate, not by way of defenses based upon the statutory
grounds for vacating raised in response to a motion to confirm." *See Carpenters 46 Northern
Cal. Counties Conference Bd. v. Meddles*, 535 F. Supp. 775, 778 (9th Cir. 1981).

22    The arbitration award in this case was filed on February 25, 2014. Thus, any motion
to vacate was required to be served on or before May 25, 2014. Respondent's motion to
23    vacate was timely served and filed on May 23, 2014. Respondent's additional answer and
counterclaims were untimely filed on June 24, 2014.

24    Absent clear authority from the Ninth Circuit, this Court is unwilling to depart from
the strong federal policy of finality from arbitration. This Court finds, as a matter of law,
25    that the failure to file a motion to vacate, modify, or correct the arbitration award within
three months after the award was filed or delivered precludes Respondent from raising any
26    defenses to the arbitration award that could have been raised in a timely motion to vacate.
Accordingly, because Respondent's counterclaims do nothing more than raise defenses to the
27    arbitration award that could have been raised in its timely motion to vacate, the Court
dismisses the counterclaims as untimely under 9 U.S.C. § 12. Therefore, Petitioner's motion
28    to strike and/or dismiss Respondent's counterclaims is moot. The Court hereby vacates the
hearing set for August 15, 2014.

United States District Court
For the Northern District of California

1   mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. §

2   10(a)(1)-(4).

3        "These grounds afford an extremely limited review authority, a limitation that is

4   designed to preserve due process but not to permit unnecessary public intrusion into private

5   arbitration matters."  *Kyocera Corp. v. Prudential Bache T Servs.*, 341 F.3d 987, 998 (9th Cir.

6   2003); *see also G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1105 (9th Cir. 2003) (noting

7   that courts "have interpreted *sections 9 and 10* [of the FAA] narrowly.") (italics in original).

8   **C.   Respondent's Motion to Vacate Award.**

9        Respondent requests that this Court vacate the Award for a variety of reasons which the

10  Court shall address below.

11       **1.   Evident Partiality of Arbitrator.**

12       Respondent alleges that the Arbitrator should be disqualified based on his evident

13  partiality.  Respondent contents that such partiality is apparent based upon the fact that (1)

14  Arbitrator Finkelstein conducted an *ex-parte* prearbitration conference and (2) Respondent was

15  excluded from participating in the selection of the Arbitrator.

16       A court may vacate an arbitration award for evident partiality under 9 U.S.C. § 10(a)(2)

17  where the arbitrator was actually biased or the arbitrator failed to disclose information giving

18  the reasonable impression of bias in favor of one party.  *Woods v. Saturn Distribution Corp.*, 78

19  F.3d 424, 427 (9th Cir. 1996).  The party challenging the arbitration award has the burden of

20  showing evident partiality.  *Id.*

21       To demonstrate evident partiality, a party moving for vacatur "must establish specific

22  facts indicating actual bias toward or against a party or show that [the challenged arbitrator]

23  failed to disclose to the parties information that creates a reasonable impression of bias."

24  *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 645-46 (9th Cir. 2010)

25  (internal quotation marks and alterations omitted).  "[V]acatur of an arbitration award is not

26  required simply because an arbitrator failed to disclose a matter of some interest to a party."  *Id.*

27  at 645.  Instead, an arbitrator is "required to disclose only facts indicating that he might

28  reasonably be thought biased" against one party and favorable to another.  *Id.* at 646 (internal

4

United States District Court
For the Northern District of California

1    quotation marks and citation omitted).  Examples of the "level of partiality" found to constitute

2    "evident partiality" include cases where "(1) an arbitrator's financial interest in the outcome of

3    the arbitration was not disclosed to the parties, (2) a familial relationship made the arbitrator's

4    impartiality suspect when not disclosed, and (3) an arbitrator's former employment by one of

5    the parties was not disclosed."  *Pacific West Securities, Inc. v. George*, 2014 WL 894843, at *2

6    (N.D. Cal. Mar. 4, 2014) (citing *Ardalan v. Macy's Inc.*,  2012 WL 2503972, at *3 (N.D. Cal.

7    June 28, 2012)) (citations omitted).

8                    **i.       *Ex-Parte* Communications.**

9            Respondent argues the Court should vacate the award for evident partiality on the basis

10   that Arbitrator Finkelstein conducted an *ex-parte* prearbitration telephone conference without

11   notice to or participation of Respondent.

12           To vacate an arbitration award on the basis of *ex-parte* communications, the movant

13   must show two things: "First, the *ex-parte* conversation must have deprived the [movant] of a

14   fair hearing and influenced the outcome of the arbitration.  Second, [the movant] must show that

15   'the subject matter of the conversation [went] to the heart of the dispute's merits.'"  *Schwartz v.*

16   *Merrill Lynch & Co.*, 2010 WL 517585, at *3 (S.D.N.Y. Feb. 8, 2010) (quoting *Spector v.*

17   *Torenberg*, 852 F. Supp. 201, 209 (S.D.N.Y. 1994)).

18           However, even taking Respondent's allegations as true, the Court is not persuaded by

19   the argument that evident partiality should invalidate the Arbitrator's decision.  The alleged

20   prejudice – Respondent's lack of notice and ultimate absence from the prearbitration telephone

21   conference, which included setting dates for discovery – does not indicate that (1) Respondent

22   was deprived of a fair hearing which influenced the outcome of the arbitration; or (2) indicate

23   that the subject matter of the conversation went to the heart of the dispute's merits.

24   Furthermore, just because the *ex-parte* communication was a matter of interest to Respondent

25   does not require this Court to vacate the award.

26                    **ii.      Selection of the Arbitrator.**

27           Respondent also argues the Court should vacate the award for evident partiality on the

28   basis that it had no opportunity to participate in the selection of Arbitrator Finkelstein in

                                                        5

**United States District Court**
For the Northern District of California

1   violation of its right under 5 U.S.C. § 577(a).  This section provides that "the parties to an

2   arbitration proceeding shall be entitled to participate in the selection of the arbitrator."

3   Respondent once again fails to meets its burden to show evident partiality.

4          Respondent does not establish specific facts indicating actual bias against it or show that

5   Arbitrator Finkelstein failed to disclose information that creates a reasonable impression of bias.

6   Moreover, the First Amendment to the Lease provides that, "all references to 'Tenant' in the

7   Lease are deemed to refer to Hermes Investment Group, Inc., an Arizona corporation and SF

8   Green Clean, LLC, a California limited liability company, collectively, as if both entities had

9   executed the Lease, and had signed the Lease in every instance that the Lease was signed by

10  Original Tenant [Hermes]."  (Proctor Decl. Ex. B at 56.)  Thus, when Respondent signed onto

11  the Lease in January 2010, Respondent effectively participated in the selection of the Arbitrator

12  by agreeing, before the dispute arose, that AAA would provide the neutral arbitrator.

13          **2.     The Matter is Arbitrable.**

14          Respondent asserts that binding arbitration is a "voluntary procedure" and that "[a]n

15  agency may not require any person to consent to arbitration as a condition of entering into a

16  contract or obtaining a benefit."  *See* 5 U.S.C. § 572(c).  Respondent seems to argue that if this

17  Court finds Respondent bound by the binding arbitration agreement, the Court should find the

18  agreement unenforceable because of the agreement's procedural unconscionability.

19          In terms of an arbitration agreement, procedural unconscionability occurs when the

20  agreement is a contract of adhesion, presented to the signee on a take-it-or-leave-it basis, and

21  the signee is required to sign the arbitration agreement as a condition of executing the lease.

22  However, even presentation of a "standardized arbitration agreement to a party of lesser

23  bargaining power on a take-it-or-leave-it basis" does not suffice for the court to find the

24  arbitration provision to be unconscionable.  *Castro v. Cintas Corp. No. 3*, 2014 WL 1410524, at

25  *6 (N.D. Cal. Apr. 11, 2014).  Instead, "there must be some evidence that, in consequence of

26  the imbalance, the party in the weaker position was defrauded or coerced into agreement to the

27  arbitration clause."  *Id.*

28

United States District Court
For the Northern District of California

1   Here, Respondent has presented no evidence that it was defrauded or coerced into

2   agreeing to the arbitration clause in the Lease.  In particular, Respondent has not shown that it

3   was forced to sign the agreement as a *condition* of leasing the property.  Moreover, the Lease's

4   arbitration clause includes the language: "The agreement by the parties to this arbitration

5   provision is *voluntary*."  (Proctor Ex. B at 33 (emphasis added).)  The inclusion of this language

6   suggests that agreement of the binding arbitration provision was voluntary and not a condition

7   of entering into the leasing contract.  Additionally, when signing the First Amendment,

8   Respondent raised no issue with the arbitration clause and thereby agreed to all terms of the

9   Lease, including the binding arbitration clause.  The Court thus finds Respondent's contention

10  that arbitration agreement is unconsionable to be unpersuasive.

11  In the alternative, Respondent also argues that by not signing the Hermes arbitration

12  clause on the actual page of the original Lease where Hermes did, it should not be bound by the

13  terms of the arbitration agreement.  Respondent asserts that arbitrability should be decided by

14  the Court, not by the Arbitrator.  Respondent relies on *Oxford Health Plans, LLC v. Sutter*,

15  which found that the "question of whether parties have a valid arbitration agreement at all is for

16  the courts to decide." 133 S. Ct. 2064, 2068 n.2 (2013).

17  This Court finds that the Lease provided a clear arbitration clause that was set forth in

18  accordance with the FAA, and which was acknowledged and accepted by John Sperling, the

19  individual who signed the Amendment on behalf of Respondent.  (Proctor Decl., Ex. B at 32-

20  33.)  The First Amendment to the Lease incorporates the terms and conditions of the Lease and

21  specifically provides Respondent was added as a co-tenant and that "[e]xcept as herein modified

22  or amended, the provisions, conditions and terms of the Lease shall remain unchanged and in

23  full force and effect."  (*Id.* at 56.)  Accordingly, when the Lease was ratified on June 22, 2007,

24  Respondent became bound by all the terms and conditions of the Lease, in the same manner and

25  to the same extent as though Respondent had been included in the Lease from its inception.

26  Thus, this Court finds Respondent's argument that it should not be bound by the terms of the

27  arbitration agreement because it only signed the First Amendment and never signed directly

28  beneath the arbitration clause in the original Lease to be unpersuasive.

United States District Court

For the Northern District of California

1    Respondent also points to Petitioner's failure to issue its arbitration guidelines until

2  approximately October 2007, over a year after the Hermes arbitration clause was drafted and

3  executed in May 2006.  In doing so, Respondent argues that it failed to issue guidance on the

4  appropriate use of binding arbitration as provided by 5 U.S.C. § 575(c).  Respondent's

5  argument fails because Section 575(c) provides that, "prior to *using* binding arbitration . . . the

6  head of an agency, in consultation with the attorney general . . . shall issue guidance on the

7  appropriate use of binding arbitration . . . . " 5 U.S.C. § 575(c) (emphasis added).  Binding

8  arbitration had not been *used* before October 2007 and there is nothing in the statute that forbids

9  Petitioner from including an arbitration clause in a lease that predated the issuance of guidance.

10  5 U.S.C. § 575(c).  Additionally, the Amendment to the Lease was signed well after the

11  issuance of the guidance in January 2010.

12           **3.      Arbitrator Did Not Engage in Misconduct.**

13           Respondent argues that Arbitrator Finkelstein was guilty of misconduct when he denied

14  its request to extend the hearing for the appearance of Petitioner's witness, Michael Fassler, an

15  employee of Petitioner who participated in the parties' dealings regarding the Doyle Drive

16  Replacement Project.  Respondent asserts that Mr. Fassler could have testified to facts

17  establishing either that Petitioner agreed to renew the lease or that it should have been estopped

18  from denying it had so agreed during the negotiations over Petitioner's response to

19  Respondent's complaints about the disruption of its business caused by the Doyle Drive

20  Replacement Project.  Respondent further asserts that Mr. Fassler could have testified regarding

21  Respondent's First Amendment defense to eviction – that the Petitioner's determination not to

22  renew Respondent's lease was in retaliation for its managing members' complaints about the

23  Doyle Drive Replacement Project and in derogation of its First Amendment rights to free

24  speech and to petition the federal government for redress of a grievance.  (*See* Respondent's

25  Cross-Motion to Vacate at 6.)

26           The FAA, 9 U.S.C. § 10(a)(3), provides that an arbitration award may be vacated

27  "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon

28  sufficient cause shown . . . "  However, because one of the policy purposes behind the FAA is

United States District Court

For the Northern District of California

the expeditious resolution of disputes, the arbitrator has wide discretion to decide whether to grant or deny a requested postponement. *See Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003). The Court therefore will affirm the award if the Arbitrator had *any* reasonable basis to deny the request for a continuance. *See Partnerweekly, LLC v. Viable Marketing Corp.*, 2012 WL 1185673, at *3 (D. Nev. Apr. 9, 2012). Thus, a court's review of an arbitration decision under the FAA is "limited and highly deferential." *Coutee v. Barington Capital Grp., L.P.*, 336 F.3d 1128, 1132 (9th Cir. 2003).

In fact, "[a]rbitrators enjoy 'wide discretion to require the exchange of evidence, and to admit or exclude evidence, how and when they see fit.'" *U.S. Life Ins. Co. v. Superior Nat. Inc. Co.*, 591 F.3d 1167, 1175 (9th Cir. 2010) (internal quotation marks and citation omitted). The arbitrator need not explain his or her rationale for an award, and the Court should confirm an award if "a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006). "Only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award." *Id.* (internal quotation and citation omitted). The party moving to vacate the award bears the burden of proof. *Id.* To support vacatur, the arbitrator's refusal "must demonstrate bad faith or be so gross as to amount to affirmative misconduct." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 (1987).

Here, Respondent has not met its heavy burden to show misconduct. Respondent merely speculates that Mr. Fassler would have testified in its favor but fails to establish that the allegedly excluded evidence influenced the outcome of the arbitration or that the Arbitrator's refusal to stay the proceeding was a demonstration of bad faith, so gross as to amount to affirmative misconduct. This Court finds that the Arbitrator had a reasonable basis to deny the requested continuance in order to promote the policy of an expeditious resolution of the arbitration proceeding.

Furthermore, this case does not rise to the level of arbitral misconduct sufficient to vacate the Award as cited by the parties. For example, this case is not similar to the arbitral misconduct in *Gulf Coast Industrial Workers Union v. Exxon Co., USA*, 70 F.3d 847, 848 (5th

United States District Court

For the Northern District of California

Cir. 1995), where the arbitrator misled a party into believing that evidence was admitted, but then ruled against the party because it failed to present evidence on the very point to which the excluded evidence was central.  Nor is this case similar to the arbitral misconduct in *Teamsters, Chauffeurs, Warehousemen and Helpers, Local Union No. 506 v. E.D. Clapp Corp.*, 551 F. Supp. 570, 578 (N.D. N.Y. 1982), where the party was not given an opportunity to complete its presentation of proof prior to issuance of the arbitration decision.

Thus, Respondent's argument that the Arbitrator engaged in misconduct by not extending the hearing ultimately fails because it has not met its burden of proof.  Moreover, the Court finds that a "barely colorable justification" for the outcome reached by the Arbitrator – to promote the policy of an expeditious resolution of the arbitration proceeding – can be inferred from the facts of this case.

**4.    Arbitrator Did Not Exceed His Authority.**

Respondent argues that Arbitrator Finkelstein exceeded his powers in a number of ways, none of which is sufficient to vacate the Award.

As a threshold matter, the Court notes that when a party moving to vacate an arbitration award makes the argument that the arbitrator has exceeded his/her powers, a court's inquiry should focuses on "whether the arbitrator had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, *not whether the arbitrator correctly decided that issue*."  *See Global Gold Mining LLC v. Caldera Resources, Inc.*, 941 F. Supp. 2d 374, 387 (S.D. N.Y. 2013) (emphasis in original).  Accordingly, an arbitrator exceeds his authority if he has considered issues beyond those the submitted by the parties or issues prohibited by the terms of their agreement.  *Rame, LLC v. Popovich*, 878 F. Supp. 2d 439, 445 (S.D.N.Y. 2012) (quoting *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011)).

The Ninth Circuit has made clear that arbitrators "exceed their powers" within the meaning of 9 U.S.C. § 10(a)(4) "not when they merely interpret or apply the governing law incorrectly, but when the award is 'completely irrational,' . . . or exhibits a 'manifest disregard of law.'"  *Kyocera Corp.*, 341 F.3d at 997 (quoting *French v. Merrill Lynch, Pierce, Fenner &*

10

United States District Court
For the Northern District of California

1    *Smith, Inc.*, 784 F.2d 902, 906 (9th Cir. 1986) and *Todd Shipyards Corp. v. Cunard Line, Ltd.*,

2    943 F.2d 1056, 1060 (9th Cir. 1991)).

3         Respondent argues that the award of $18,687.50 in attorneys fees for private counsel to

4    prepare for and conduct a one-day arbitration hearing was in excess of the Arbitrator's powers

5    within the meaning of 9 U.S.C. § 10(a)(4).  Respondent also argues that it did not agree to pay

6    AAA for the services it provided, in violation of 5 U.S.C. § 573(e), that "[t]he parties shall

7    agree on compensation for the neutral . . . . "

8         This Court has already found that after Respondent signed the First Amendment, which

9    became effective on January 22, 2007, it became bound by all terms and conditions of the

10   Lease, in the same manner and to the same extent as though Respondent had been included in

11   the Lease from its inception.  Accordingly, Respondent became bound by Article 24 of the

12   Lease which provides that "the prevailing party shall be entitled to obtain, as part of the

13   judgment or award, all reasonable attorney's fees, costs and expenses incurred in connection

14   with such litigation or arbitration . . . . "  (Proctor Decl. Ex. B at 32.)  Thus, this Court finds that

15   the Arbitrator did not exceed his powers within the meaning of 9 U.S.C. § 10(a)(4) by awarding

16   $18,687.50 in attorney fees and $5,650 for AAA.  It is neither "completely irrational" nor a

17   "manifest disregard of law" for the Arbitrator to award attorney's fees, costs and expenses

18   incurred as a result of the present arbitration because Article 24 of the Lease provides for such

19   power.  (*See* Proctor Ex. B at 32.)  The Court rejects Respondent's argument that the fee awards

20   ordered by the Arbitrator were in excess of the Arbitrator's power.

21        Respondent also argues that despite its objection at the arbitration hearing, Petitioner

22   was represented by private attorney Theodore Griffinger of Stein & Lubin, LLP.  Respondent

23   points to Section 104(h) of The Presidio Trust Act, 16 U.S.C. § 460bb App., Pub. L. 104-33,

24   Title I, § 103, which provides that, "[l]itigation arising out of the activities of the [Petitioner]

25   shall be conducted by the Attorney General; except that the Trust may retain private attorneys

26   to provide advice and counsel."  Petitioner, however, points out that the statute asserts that the

27   Attorney General shall conduct litigation, not arbitration.  Petitioner relies on *American Express*

28   *Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2315 (2013), distinguishes between litigation

11

United States District Court

For the Northern District of California

1   and arbitration by finding that "what the FAA prefers to litigation is arbitration."  In fact, the

2   arbitration agreement at issue in this case provides that "Landlord and Tenant each waives and

3   relinquishes any rights it might possess to have the dispute as to the arbitration matters litigated

4   in a court or jury trial."  (Proctor Decl. Ex. B at 27 (emphasis added).)  The Court is not

5   persuaded by Respondent's argument that the Arbitrator exceeded his authority by allowing

6   Petitioner to be represented by a private attorney.

7        Respondent finally argues that the arbitration clause contains no cap or maximum award

8   as directed by the FAA, 5 U.S.C. § 575(a)(2), but Petitioner makes a persuasive counter-

9   argument that the arbitration clause does include a cap – the right to possession of the premises.

10  Respondent also attempts to raise the argument that it also prevailed in the arbitration award

11  because the Petitioner was denied immediate possession.  However, this argument fails because

12  Petitioner was awarded possession and fees, which is why Petitioner seeks confirmation of the

13  award and Respondent seeks vacatur of the award.

14       In sum, this Court finds all of Respondent's arguments that the Arbitrator exceeded his

15  authority to be unconvincing and therefore denies the Respondent's motion to vacate the

16  Award.

17  **D.     Petitioner's Cross-Motion to Confirm Award.**

18       Petitioner brings a motion to confirm the arbitration award and enter judgment on its

19  behalf under the FAA, 9 U.S.C. § 9, which provides in relevant part:

20       If the parties in their agreement have agreed that a judgment of the court
         shall be entered upon the award made pursuant to the arbitration, and shall
21       specify the court, then at any time within one year after the award is made
         any party to the arbitration may apply to the court so specified for an order
22       confirming the award . . . .

23       The parties' agreement states that, "[t]he arbitrator's judgment, which may include the

24  immediate eviction of Tenant, shall be final and binding on all parties, and judgment may be

25  entered and enforced in the United States District Court for the Northern District of California .

26  . . . "  (Proctor Decl. Ex. B at 33.)  Therefore, the Court finds that the parties have agreed to

27  have this Court confirm the arbitration award.

28

12

**CONCLUSION**

To effectuate the goals of the FAA, there is a strong presumption in favor of confirming arbitration awards. *See Jock*, 646 F.3d at 121. Here, Respondent has not overcome that presumption. Thus, for the foregoing reasons, Petitioner's motion to confirm the arbitration award is GRANTED and Respondent's cross-motion to vacate arbitration award is DENIED. The Court CONFIRMS the Arbitration Award.

**IT IS SO ORDERED.**

Dated: August 8, 2014

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE